# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 15, 2009

Charles R. Fulbruge III
Clerk

No. 09-30232

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ERNEST TURNER, also known as Baldie Turner, also known as B-Man
Turner,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:07-CR-343

Before JOLLY, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Ernest Turner was charged by indictment with one
count of conspiring to distribute more than five kilograms of cocaine
hydrochloride. After a jury found Turner guilty, the district court sentenced him
to 365 months' imprisonment and entered a forfeiture order against him in the
amount of $10 million. Turner now appeals his conviction and sentence on three

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

grounds that: (1) the evidence from a search of his residence should have been suppressed because the magistrate judge had issued the search warrant based on stale and unreliable information that failed to establish probable cause; (2) the district court erred by curtailing defense counsel's cross-examination of a key government witness; and (3) the district court's forfeiture order is both unauthorized by statute and unconstitutional. We address each ground in turn, beginning with Turner's contention that the evidence recovered from his residence should have been suppressed because the magistrate judge who issued the search warrant relied on stale information that failed to establish probable cause.

We review a district court's denial of a motion to suppress *de novo* and its findings of fact for clear error, considering all evidence introduced during both the suppression hearing and the trial in the light most favorable to the prevailing party — here, the government.[1] When, as here, the motion being reviewed attacks the validity of a search warrant, we must first determine whether the good-faith exception applies, *i.e.*, whether the law enforcement officers who executed the warrant acted in objectively reasonable good-faith reliance on the warrant's validity.[2] Only if we conclude that they did not act in such good faith reliance do we then examine the underlying affidavit and other circumstances surrounding the issuance of the warrant to determine whether it

---

[1] *See United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005); *United States v. Laury*, 985 F.2d 1293, 1314 (5th Cir. 1993).

[2] *See United States v. Leon*, 468 U.S. 897, 922-23 (1984) (describing the good-faith exception and explaining that "penalizing the officer for the [magistrate judge's] error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations").

was issued on the basis of probable cause.[3]  "Issuance of a warrant by a magistrate normally suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant."[4]

Turner insists that the good-faith exception is inapplicable here, not because the affidavit was bare bones or because the officers who executed the warrant did so in bad faith or because it was so facially deficient that the officers who executed it could not have believed that it was valid, but because the facts alleged in the underlying affidavit were so stale and unreliable that the magistrate judge must have "wholly abandoned his judicial role" to conclude that the affidavit established probable cause.[5]  We cannot agree with Turner that no neutral and detached magistrate could have found probable cause based on the affidavit.  It alleged not only past drug trafficking, but also far-reaching and ongoing criminal activity, including facts that, if true, would constitute insurance fraud, mortgage fraud, FEMA fraud, tax fraud, and money laundering.[6]  We conclude, therefore, that the good-faith exception does apply

---

[3]  *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if a decision on the admissibility of the evidence under the good-faith exception [] will resolve the matter." (internal quotation marks and citation omitted)).

[4]  *Id.* at 821.

[5]  *See United States v. Gibbs*, 421 F.3d 352, 358 (5th Cir. 2005).  We have previously explained that the good-faith exception applies unless (1) the affiant deliberately or recklessly misled the issuing judge with false information; (2) the issuing judge wholly abandoned his judicial role in such a way that no reasonably well trained officer should have relied on the warrant; (3) the underlying affidavit is bare bones; or (4) the warrant is so facially deficient that the executing officers could not reasonably have believed that it was valid.  *Id.*

[6]  *See Craig*, 861 F.2d at 822 (explaining that if "the information of the affidavit clearly shows a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information and issuance of the warrant, the information need not

here, and we perceive no error in the district court's denial of Turner's suppression motion.[7]

Turner's next contention is that the district court erred when it limited defense counsel's cross-examination of a government witness regarding his expectation of leniency in exchange for testifying. "Alleged violations of the Confrontation Clause [of the Sixth Amendment] are reviewed *de novo*, but are subject to a harmless error analysis."[8] The Confrontation Clause guarantees a criminal defendant the right to cross-examine the witnesses against him, but, as we have previously explained, this right is not "unlimited."[9] Rather, the Confrontation Clause is satisfied where defense counsel has been permitted to "expos[e] to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of a witness."[10]

Turner's trial counsel was permitted to extensively cross-examine Foster, a convicted drug dealer who was testifying for the government, regarding (1) his criminal background, including his lengthy history of dealing drugs; (2) his 1993 criminal conviction; (3) his association with Tijerina, a large-scale drug trafficker; (4) his strange behavior at the time of his arrest; (5) his initial

_____

be regarded as stale" (quoting *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984)).

[7] Because we conclude that the good-faith exception applies, we need not determine whether the affidavit establishes probable cause.

[8] *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004).

[9] *United States v. Jimenez*, 464 F.3d 555, 559 (5th Cir. 2006).

[10] *Id.* at 562; *see Bigby v. Dretke*, 402 F.3d 551, 573 (5th Cir. 2005) (explaining that the Confrontation Clause does not guarantee defendants the right to "cross-examination to whatever extent they desire").

reluctance to provide law enforcement officers with the names of his accomplices; (6) his guidelines advisory sentencing range of ten years-to-life; (7) his actual sentence of only 87 months; (8) the fact that he had not been required to forfeit any assets following his conviction; (9) the amount of time he still had left to serve on his sentence; and (10) his desire to receive a sentence reduction in exchange for his testimony. It was only after defense counsel began to ask Foster a series of speculative questions regarding other possible sentencing ranges Foster might have faced that the district court curtailed cross-examination and ordered defense counsel to abandon this line of questioning. Based on our thorough review of the transcript, we are confident that the district court did not deprive Turner of his Sixth Amendment rights or otherwise abuse its discretion by so limiting defense counsel's speculative questioning. Counsel was undoubtedly permitted to "expos[e] to the [jurors] the facts from which [they], as the sole triers of fact and credibility," could draw inferences regarding Foster's reliability.[11]

Turner's third contention is that the district court's forfeiture order, in the form of a $10-million personal money judgment, is both unauthorized by statute and unconstitutional under the Excessive Fines Clause of the Eighth Amendment. Turner concedes, however, that this argument is foreclosed by our precedent and that he includes it here only to preserve it for possible review by

---

[11] *See Jimenez*, 464 F.3d at 562.

the Supreme Court.[12]  We perceive no error in the district court's forfeiture order.

For the foregoing reasons, the judgment of the district court is, in all respects,

AFFIRMED.

---

[12] *See, e.g., United States v. Buchanan*, 70 F.3d 818, 830 n.12 (5th Cir. 1995) (explaining that "the forfeiture of drug proceeds does not constitute punishment, and thus ... the Eighth Amendment prohibition against excessive fines [is not] applicable" (internal quotation marks and citation omitted)).